UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GRIGORIY ZAGERSON,

                    Plaintiff,

            -v.-

NEW YORK CITY DEPARTMENT OF EDUCATION
and BERNADETTE TOOMEY, *Principal of PS 195*,

                    Defendants.

---

20 Civ. 11055 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Grigoriy Zagerson, a former paraprofessional at Public School ("P.S.") 195 in Brooklyn, brings suit against the New York City Department of Education ("DOE") and Bernadette Toomey, the principal of P.S. 195 (together with DOE, "Defendants"), alleging that he was subjected to workplace discrimination and a hostile work environment because of his Russian heritage and Jewish religion.  Plaintiff brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 297; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131, arguing that Defendants fabricated several disciplinary notices against him, stripped him of his job responsibilities, suspended him, and eventually fired him.

Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that most of Plaintiff's discrimination claims are time-barred, and that any timely claims are inadequately pleaded.

Additionally, Defendants argue that the record discloses a legitimate, non-discriminatory justification for terminating Plaintiff's employment that was upheld by the New York State Supreme Court in a related proceeding.  *See Zagerson* v. *N.Y.C. Dep't of Educ.,* No. 161586/2019, 2020 WL 5801070 (N.Y. Sup. Ct. Sept. 29, 2020).  For the reasons set forth in the remainder of this Opinion, Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

### A.   Factual Background

### 1.   Plaintiff's Employment at DOE

Plaintiff Grigoriy Zagerson served as a paraprofessional for Defendant New York City Department of Education from October 2010 to September 17, 2019.  (Compl. ¶ 1).[2]  As relevant here, Plaintiff began working on April 19, 2012, as a paraprofessional at P.S. 195, a DOE-operated school in Brooklyn,

---

[1]   The facts set forth herein are drawn from Plaintiff's Complaint (Dkt. #1 ("Compl.")), and, as appropriate, the exhibits attached to the Declaration of Donald C. Sullivan in Support of Defendants' Answer (Dkt. #13 ("Sullivan Decl., Ex. [ ]")), all of which are documents that are incorporated by reference in the Complaint.  *See L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (explaining that on a Rule 12(c) motion, a court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case").

For ease of reference, Defendants' opening memorandum of law in support of their motion for judgment on the pleadings is referred to as "Def. Br." (Dkt. #22); Plaintiff's opposition memorandum is referred to as "Pl. Opp." (Dkt. #23); and Defendants' reply memorandum is referred to as "Def. Reply" (Dkt. #27).

[2]   Plaintiff presents the allegations supporting his claims in an addendum appended to the Complaint.  (*See* Compl. 8-16).  The Court's pinpoint citations to specific paragraphs of the Complaint pertain to the corresponding numbered paragraphs in the addendum.  Similarly, the Court's references to pages of the Complaint refer to the pagination generated by the Court's Electronic Case Filing ("ECF") system.

New York.  (*Id.* at ¶ 2).  Defendant Bernadette Toomey assumed the role of principal at P.S. 195 in or around September 2012.  (*Id.* at ¶ 3).

Plaintiff contends that between 2013 and 2018, Toomey discriminated against him and several other Russian and Jewish employees at P.S. 195 by subjecting them to unwarranted discipline and humiliation.  (Compl. ¶¶ 49-51, 56).  For instance, while Plaintiff and his Russian and Jewish colleagues faced excessive scrutiny and writeups, Toomey overlooked comparable or worse transgressions by an Irish teacher and an Irish paraprofessional.  (*Id.* at ¶¶ 52-54).

As an example of Toomey's discrimination, Plaintiff alleges that he was the only paraprofessional at P.S. 195 to receive disciplinary letters to his personnel file for conduct that was engaged in by other paraprofessionals.  (Compl. ¶¶ 8, 12, 34).  Plaintiff received the first of these disciplinary letters in May 2013 for assisting a student in performing make-up work during the student's lunch period.  (*Id.* at ¶ 4).  According to Plaintiff, this letter was unjustified because it was common practice at the school prior to Toomey's arrival for paraprofessionals to assist students in completing their unfinished classwork during lunch.  (*Id.* at ¶¶ 4-8).

Plaintiff received a second disciplinary letter on January 15, 2014, for disobeying a teacher and providing his own instruction while working with a kindergarten student.  (Compl. ¶¶ 9, 11).  Plaintiff contends that the allegations in this letter were unjustified because he diligently followed the teacher's directions and merely sought to refocus the student without implementing his

own teaching plan. (*Id.* at ¶¶ 10-11). Plaintiff was the only paraprofessional to be admonished for this behavior, despite it being common practice for other paraprofessionals to provide instruction alongside teachers. (*Id.* at ¶ 12).

Plaintiff's third disciplinary letter was dated February 27, 2014, and related to Plaintiff's practice of clapping his hands next to a kindergarten student's ears as a method for regaining the student's attention. (Compl. ¶¶ 13-14, 17). Plaintiff was confused by this disciplinary notice, as Toomey had specifically directed him to communicate with his student using non-verbal means. (*Id.* at ¶ 15). When Plaintiff emailed the teacher and Toomey seeking clarification, he received no response. (*Id.* at ¶ 16). That silence did not mean the issue was resolved, however, as Toomey later opened an investigation into Plaintiff's interaction with this student. (*Id.* at ¶ 17).

Following this slew of unjustified disciplinary letters, Plaintiff contacted his union representative to explore the possibility of filing a harassment charge against Toomey. (Compl. ¶ 18). Plaintiff separately confided in a colleague that he was distressed to have received three disciplinary letters in a relatively short period of time, and mentioned that the prospect of losing his job and ability to provide for his family had led him to consider killing himself. (*Id.*). Plaintiff's colleague notified the school counselor of Plaintiff's issues, who in turn passed the information to Toomey. (*Id.*). Upon learning of Plaintiff's suicidal ideation, DOE requested that Plaintiff undergo a psychological examination. (*Id.* at ¶ 19). After an eight-week period of treatment by a psychotherapist, Plaintiff was deemed fit to return to the classroom. (*Id.* at ¶¶ 19-20).

After receiving clearance to return to the classroom, Plaintiff was suspended by DOE for five days without pay.  (Compl. ¶ 21).[3]  Plaintiff's union representative encouraged him to challenge this suspension, but Plaintiff declined to do so for fear that it might further anger Toomey.  (*Id.*).  Upon serving this suspension, Plaintiff was ordered by Toomey to observe other paraprofessionals for a period of two weeks and report his findings to her.  (*Id.* at ¶ 22).  In his report, Plaintiff stated that the paraprofessionals he observed consistently engaged in the activities for which he had just been disciplined.  (*Id.* at ¶ 23).

Thereafter, from approximately 2014 to 2018, Plaintiff did not receive any disciplinary letters.  (Compl. ¶ 24).  Instead, during this period, Toomey or an assistant principal informed every teacher with whom Plaintiff worked that Plaintiff warranted special attention and that everything he did should be reported to the administration.  (*Id.*).  No other paraprofessional was the subject of a similar advisory.  (*Id.*).  Plaintiff received uniformly positive recommendation letters from the teachers to whom he was assigned and from the parents of the students he served.  (*Id.* at ¶¶ 26-27).

In late February and mid-March 2018, Plaintiff was subjected to two unexpected transfers.  The first transfer took place toward the end of February, when Plaintiff was removed from his position serving two bilingual students in a Special Education class and assigned to a first-grade General Education

---

[3]     Plaintiff does not explicitly articulate the reason for this suspension.

class. (Compl. ¶ 30). The second transfer occurred not long after beginning his new assignment, when on March 13, 2018, Plaintiff was unexpectedly removed from the first-grade class and told to stay in the teacher's lunchroom. (*Id.* at ¶ 31).

One week later, on March 19, 2018, Plaintiff was asked to report to Toomey's office with his union representative. (Compl. ¶ 32).[4] The following day, on March 20, 2018, Plaintiff received a disciplinary letter, in which Toomey summarized the contents of the previous day's meeting and concluded that Plaintiff had "demonstrated dereliction of duty" and been "insubordinate" on several occasions between February 2018 and March 2018. (*See* March 20, 2018 Letter at 1-2). The letter detailed multiple instances of misconduct, including that Plaintiff had (i) played checkers with a student during lunch; (ii) twice left his assigned student unattended; (iii) disobeyed a classroom teacher's direction; (iv) read union materials during instructional time; and (v) instructed another paraprofessional's assigned student. (*Id.*; *see also* Compl. ¶¶ 33-35). As with the previous disciplinary letters, Plaintiff claims that he was criticized for engaging in activity that was common practice among other paraprofessionals. (Compl. ¶¶ 33-35). Following this disciplinary notice,

---

[4]     Plaintiff alleges in the Complaint that this meeting with Toomey occurred on March 20, 2018. (Compl. ¶ 32). This date is contradicted by a March 20, 2018 letter from Toomey, signed and acknowledged by Plaintiff, which notes that he and his union representative met with Toomey to discuss allegations of professional misconduct on March 19, 2018. (*See* Sullivan Decl., Ex. A ("March 20, 2018 Letter") at 1). The Court reconciles this conflict by relying on the contemporaneous documentary evidence as establishing the date of this meeting. *See, e.g., In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that … are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely[.]").

Plaintiff was ordered not to return to the classroom and to remain in the teacher's lunchroom during the workday.  (*Id.* at ¶ 36).  Plaintiff received no indication as to when he would return to his regular duties, and Toomey berated him when he sought clarification.  (*Id.*).

On March 26, 2018, Plaintiff received a letter advising him of a meeting with Toomey scheduled for March 28, 2018, and putting him on notice that disciplinary action may be taken against him during the meeting.  (Sullivan Decl., Ex. B ("March 26, 2018 Letter")).[5]  This meeting never took place; instead, on March 29, 2018, Plaintiff was unexpectedly suspended without pay and ordered to go home.  (Compl. ¶¶ 37-38; *see also* Sullivan Decl., Ex. C ("March 29, 2018 Letter")).  On March 29, 2018, Plaintiff was advised via letter that he was the subject of a pending investigation from the Office of the Special Commissioner of Investigation ("SCI"), the nature of which required his immediate removal from his assignment as a paraprofessional.  (March 29, 2018 Letter).  It was not until May 2018, after sitting for an interview with SCI investigators, that Plaintiff learned that he had been accused of inappropriately kissing three students at P.S. 195.  (Compl. ¶ 38).  Plaintiff maintains that these allegations are false.  (*Id.*).

### 2.    The SCI Investigation and Plaintiff's Termination

Plaintiff was first reported to the SCI in March 2018.  (Sullivan Decl., Ex. E ("SCI Report") at 1).  As documented by the SCI investigation, Toomey

---

[5]    Plaintiff's Complaint mistakenly dates the meeting in 2020, but the letter to which the Complaint refers contains the correct date.  (*Compare* Compl. ¶ 37, *with* March 26, 2018 Letter).

reported that three students had accused Plaintiff of kissing them on the cheek. (*Id.*). Toomey informed the investigators that the mother of one of these students had initially complained to her about Plaintiff's conduct, which complaint prompted Toomey to ask that student if anyone else had witnessed Plaintiff kiss her. (*Id.*). Toomey spoke to a second student who revealed that she too had been kissed by Plaintiff. (*Id.*). Toomey also told the investigators that another paraprofessional, Colleen Donnery, had observed Plaintiff paying particular attention to a third female student in the classroom. (*Id.*; Compl. ¶ 42). Donnery told the investigators, however, that she did not witness any inappropriate behavior by Plaintiff toward this student. (SCI Report 1).

The SCI investigators then spoke to the three students in Toomey's presence. (SCI Report 2). Each of the students relayed that Plaintiff had, at different times, kissed them on their cheeks while at school. (*Id.*). Each of the students also provided a written statement detailing their relevant interactions with Plaintiff. (Sullivan Decl., Ex. F). One of the students said that Plaintiff made her feel "oncomferatable," while another said that she felt "creept out" by Plaintiff. (*Id.* at 3-4).[6]

On May 2, 2018, Plaintiff sat for an interview with SCI investigators. (Compl. ¶ 39). Plaintiff consistently denied kissing the students, but acknowledged that he may have accidentally touched the girls on the cheek when comforting them and may have "pecked" two of them on the cheek. (*Id.*;

---

[6]     The Court has elected to retain the spelling idiosyncrasies of each student.

SCI Report 2).  According to the SCI Report, Plaintiff explained to the interviewers that he paid particular attention to one of the students because, like himself, she was a native Russian speaker.  (*Id.*).  Plaintiff recalled that he may have pecked this student on the cheek at one point.  (*Id.*).  Plaintiff claimed that he had no recollection of kissing either of the other two students, but later admitted that he might have pecked one of them on the cheek on a day when she arrived at school upset.  (*Id.*).  He also shared with the investigators that Toomey had been discriminating against him for years. (Compl. ¶ 40).

On August 2, 2019, the SCI issued a report finding the allegations against Plaintiff to be substantiated and recommending the termination of his employment.  (Compl. ¶ 45; *see also* SCI Report 2).  Following the release of this report, Plaintiff met with Toomey on September 6, 2019, to discuss the findings of the SCI investigation.  (Sullivan Decl., Ex. G ("September 17, 2019 Letter")).  At this meeting, Plaintiff denied the allegations levied against him and apologized if his clumsiness had caused the children any discomfort. (Compl. ¶ 46; September 17, 2019 Letter 1-2).  On September 17, 2019, Plaintiff received a termination letter from Toomey, which concluded that Plaintiff had "failed to appreciate appropriate paraprofessional/student boundaries when [he] kissed and hugged three students ranging in age from six to eight."  (September 17, 2019 Letter 2).  Toomey framed Plaintiff's infractions with reference to the school's sexual harassment policy, which defines sexual harassment to "include[ ] situations where the conduct has the

purpose or effect of unreasonably interfering with a student's education or creating an intimidating, hostile or offensive educational environment." (*Id.*). Because Plaintiff had "unreasonably interfered with the education of" the three students, Toomey terminated his employment. (September 17, 2019 Letter 2; Compl. ¶ 47).

### 3.    Plaintiff's Article 78 Proceeding

On November 27, 2019, Plaintiff filed a petition in New York State Supreme Court, challenging his termination pursuant to Article 78 of the New York Civil Practice Laws and Rules ("C.P.L.R."). (Sullivan Decl., Ex. D at 5). *Zagerson*, 2020 WL 5801070, at *2. Plaintiff asserted two causes of action in the Article 78 proceeding: (i) DOE's decision to terminate him had been arbitrary and capricious because the SCI investigators had failed both to interview all potential adult witnesses in substantiating the SCI's findings and to provide precise dates for the allegations against him; and (ii) DOE's alleged post-termination act of placing an unfavorable designation on him in its database caused him difficulty in securing employment. *Id.* at *3-4.

In a Memorandum Decision dated September 29, 2020, the state court rejected both claims and dismissed Plaintiff's Article 78 petition. *Zagerson*, 2020 WL 5801070, at *3-4. With respect to Plaintiff's first claim, the court determined that there was a rational basis for Plaintiff's termination and that DOE had provided him with enough information about the charges levied against him to satisfy due process. *Id.* at *3. The court similarly dismissed

10

Plaintiff's second claim, finding that DOE's decision to terminate him did not
"shock the conscience" given Plaintiff's "serious misconduct."  *Id.* at *4.

## B.    Procedural Background

Following his termination, on October 28, 2019, Plaintiff dual-filed an
administrative charge with the New York State Division of Human Rights
("SDHR") and the Equal Employment Opportunity Commission ("EEOC"),
alleging that he was targeted for being Jewish and Russian (the "SDHR
Complaint").[7]  On September 30, 2020, Plaintiff received a right to sue letter
from the EEOC.[8]

Plaintiff commenced the instant action with the filing of the Complaint on
December 28, 2020.  (Dkt. #1).  Defendants filed their Answer to the Complaint
on May 14, 2021.  (Dkt. #12-13).  On June 3, 2021, Defendants submitted a
pre-motion letter indicating their intent to file a motion for judgment on the
pleadings.  (Dkt. #14).  Plaintiff filed a letter in opposition on June 8, 2021.
(Dkt. #15).  The following day, on June 9, 2021, the Court scheduled a
conference to discuss Defendants' anticipated motion.  (Dkt. #16).

The Court held a conference with the parties on June 22, 2021, and
thereafter set a briefing schedule for Defendants' motion.  (*See* Minute Entry of

---

[7]     Plaintiff appended the SDHR Complaint to his pleadings.  (Compl. 17-24).  In the
section of the complaint form containing information regarding the acts of alleged
discrimination reported to the SDHR, Plaintiff specifically demarcated his receipt of
disciplinary notices and his termination.  (*Id.* at 18).  Plaintiff also includes in the SDHR
Complaint an addendum outlining the factual basis for his complaint, wherein he
details his suspension in March 2018, the "faulty and incomplete" SCI investigation
predicated on avowedly false allegations, and his termination.  (*Id.* at 23-24).

[8]     Plaintiff also appended the right to sue letter to the Complaint.  (Compl. 25).

June 22, 2021; Dkt. #17).  Defendants filed their opening papers on July 23,

2021.  (Dkt. #20-22).  Plaintiff filed his opposition brief on September 10, 2021.

(Dkt. #23).  Defendants filed their reply brief on September 29, 2021.  (Dkt.

#27).  Accordingly, Defendants' motion is fully briefed and ready for

consideration.

## DISCUSSION

### A.  Motions for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings

are closed — but early enough not to delay trial — a party may move for

judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Courts apply the same

standard to evaluate motions for judgment on the pleadings under Rule 12(c)

as for motions to dismiss under Rule 12(b)(6).  *Altman* v. *J.C. Christensen &*

*Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015).  This standard requires courts

to "draw all reasonable inferences in [the non-movant's] favor, assume all well-

pleaded factual allegations to be true, and determine whether they plausibly

give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98,

104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y.*

*Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  The non-movant is entitled to

relief if he or she alleges "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re*

*Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does

not require heightened fact pleading of specifics, it does require enough facts to

nudge [the non-movant's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

"Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." *Nielsen* v. *Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker* v. *Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). "Even in a *pro se* case ... 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). The Second Circuit has instructed that "[a] district court should not dismiss a claim 'unless it is satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief.'" *Lefkowitz* v. *McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 356 (S.D.N.Y. 2014) (second alteration in original) (quoting *Patel* v. *Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)). Although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis*, 618 F.3d at 170.

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation

marks and citation omitted); *see also Lively* v. *WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (explaining that a court "should remain within the non-movant's pleading when deciding" Rule 12(c) motions. A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc.*, 647 F.3d at 422 (quoting *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Here, the Court considers several documents that were either incorporated by reference in the Complaint or that are appropriate subjects of judicial notice. Among these documents, Defendants have appended several exhibits to their answer, which the Court may properly consider as incorporated by reference in the Complaint.[9] In addition, the Court may take judicial notice of public court filings, such as the New York State Supreme Court decision dismissing Plaintiff's Article 78 petition (Sullivan Decl., Ex. D), "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)

---

[9]     In particular, the Court deems the following materials to be incorporated by reference in the Complaint: (i) the March 20, 2018 Letter (Sullivan Decl., Ex. A); (ii) the March 26, 2018 Letter (*id.*, Ex. B); (iii) the March 29, 2018 Letter (*id.*, Ex. C); (iv) the SCI Report (*id.*, Ex. E); (v) the SCI witness statements (*id.*, Ex. F); and (vi) the September 17, 2019 letter (*id.*, Ex. G).

(citation omitted); *see also Gracia* v. *City of New York*, No. 16 Civ. 7329 (VEC), 2017 WL 4286319, at *1 (S.D.N.Y. Sept. 26, 2017) (noting the same).

## B.      Plaintiff's Allegations State a Claim for Religious and National Origin Discrimination

Plaintiff asserts claims of employment discrimination against Defendants pursuant to Title VII, the NYSHRL, and the NYCHRL.  The Court understands Plaintiff's core discrimination claim to be that his termination was motivated by Defendants' animus toward his religion and ethnicity.  (*See* Compl. ¶ 56 ("I believe that I have been discriminated against based on my Jewish religion and Russian ethnicity, which has resulted in the unjust termination of my employment from [DOE].")).  At the same time, Plaintiff alleges several other discrete actions that were allegedly animated by this same discriminatory impulse, including: (i) the disciplinary notices he received from Defendants (*id.* at ¶¶ 4, 9, 13, 33); (ii) the heightened scrutiny he received from the school administration between 2014 and 2018 (*id.* at ¶ 24); (iii) his unexpected transfer to another class assignment in February 2018 (*id.* at ¶ 30); (iv) the order he received to leave class on March 13, 2018, which led to his relegation to the teacher's lunchroom (*id.* at ¶ 31); and (v) his March 29, 2018 suspension after the commencement of an SCI investigation that was premised on what Plaintiff claims to be false allegations (*id.* at ¶¶ 38, 43).

Defendants argue that judgment should be entered in their favor for two primary reasons.  Defendants first contend that to the extent Plaintiff has pleaded claims of discrimination predicated on events other than his termination, these claims are time-barred.  (Def. Br. 6).  And while Defendants

15

concede that Plaintiff's termination occurred within the limitations period, they argue that Plaintiff has nevertheless failed to plead a plausible claim of discrimination because (i) the Complaint lacks allegations of direct evidence of discrimination and (ii) the New York State Supreme Court's decision establishes that Defendants had a legitimate business reason for terminating Plaintiff. (Def. Br. 7-11). As the Court will explain, Plaintiff has pleaded both timely and plausible claims of discrimination under federal, state, and city law.

### 1. Timeliness

The statute of limitations applicable to Plaintiff's claims varies depending on the statute and the Defendant. In sum, Plaintiff's Title VII claims are governed by a 300-day statute of limitations; Plaintiff's NYSHRL and NYCHRL claims against DOE are governed by a one-year statute of limitations; and Plaintiff's NYSHRL and NYCHRL claims against Toomey are governed by a three-year statute of limitations. Each of these limitations periods began to run as of October 28, 2019, when Plaintiff dual-filed a charge with the EEOC and the SDHR. (Compl. 20). The Court addresses these limitations periods, and the conduct that falls within them, in more detail in the remainder of this section.

### a. Title VII

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams* v. *N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam) (citing 42 U.S.C. § 2000e-5). In

addition, a "claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct," and failure to do so renders any such claim time-barred. *Id.* This statute of limitations applies equally to "both discrete discriminatory acts and hostile work environment claims." *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 110 (2002). "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112. This is true even when those acts "are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

Applying this standard, the Court concludes that Plaintiff's Title VII claims are timely only with respect to alleged conduct that occurred after December 31, 2018 (*i.e.*, 300 days before Plaintiff filed his charge with the EEOC). Defendants concede that Plaintiff's termination, which occurred on September 17, 2019, took place within the limitations period. (Def. Br. 6). By contrast, most of the other discrete events alleged in the Complaint pertain to conduct that occurred beyond the limitations period for Plaintiff's Title VII claims. These events include: (i) all four of Plaintiff's disciplinary notices (Compl. ¶ 4 (May 2013); *id.* at ¶ 9 (January 15, 2014); *id.* at ¶ 13 (February 27, 2014); *id.* at ¶¶ 33, 36 (March 20, 2018)); (ii) Toomey's request that teachers keep an especially close eye on Plaintiff (*id.* at ¶ 24); (iii) Plaintiff's transfer to another class at the end of February 2018 (*id.* at ¶ 30); (iv) the directive stripping Plaintiff of his classroom duties and consigning him to the teacher's lunchroom on March 13, 2018 (*id.* at ¶¶ 31, 36); and (v) Plaintiff's suspension

on March 29, 2018 (*id.* at ¶ 38).  Thus, to the extent Plaintiff asserts Title VII discrimination claims arising from any discrete event other than his termination, these claims are time-barred.[10]

      **b.**    **The NYSHRL and the NYCHRL**

The ordinary statute of limitations for claims under the NYSHRL and NYCHRL is three years.  *See* N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d).  However, the New York Education Law expressly provides that "notwithstanding any other provision of law providing a longer period of time in which to commence an action[,] ... no action ... shall be commenced against any [board of education or officer thereof] more than one year after the cause of action arose[.]"  N.Y. Educ. Law § 3813(2-b).  In other words, where "a claim is against an educational institution, the statute of limitations is one year." *Langella* v. *Mahopac Cent. Sch. Dist.*, No. 18 Civ. 10023 (NSR), 2020 WL 2836760, at *15 (S.D.N.Y. May 31, 2020).

"The Second Circuit has not yet determined whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under the NYSHRL and NYCHRL."  *Rogers* v. *Fashion Inst. of Tech.*,

---

[10]     To be clear, the fact that certain of Plaintiff's allegations fall outside of the limitations period does not extinguish their relevance to a timely discrimination claim.  *See Davis-Garett* v. *Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of the limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'" (quoting *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 113 (2002)).

    As the Court has determined that certain of Plaintiff's allegations of discrimination are time-barred, it need not reach Defendants' argument that Plaintiff has abandoned his defense of these untimely claims.  (Def. Reply 3-4).

No. 14 Civ. 6420 (AJN), 2017 WL 1078572, at *9 n.5 (S.D.N.Y. Mar. 21, 2017) (citation omitted).  Nevertheless, numerous courts in the Second Circuit have held that the filing of an EEOC charge does indeed toll the limitations period. *See Esposito* v. *Deutsche Bank AG*, No. 07 Civ. 6722 (RJS), 2008 WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008) (collecting cases).

Accordingly, a one-year statute of limitations period applies to Plaintiff's NYSHRL and NYCHRL claims against DOE.  This means that any such claims predicated on conduct prior to October 29, 2018, are untimely.  Applying this limitations period, the Court finds that Plaintiff's only timely discrimination claim against DOE is that predicated on his termination.  Just as with Plaintiff's Title VII claims, all other discrete events alleged in the Complaint that could plausibly constitute a standalone discrimination claim occurred after the applicable limitations period.

By contrast, a three-year statute of limitations period applies to the NYSHRL and NYCHRL claims against Defendant Toomey, because a school principal is not considered an officer of a board of education as defined under New York Education Law § 2(13).  *See Warmin* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2018 WL 1441382, at *7 (S.D.N.Y. Mar. 22, 2018).  Thus, to be timely, Plaintiff's allegations related to Toomey's conduct must have occurred prior to October 29, 2016.  This longer statute of limitations period expands the universe of timely allegations against Toomey.  Plaintiff alleges that, in addition to terminating him, Toomey discriminated against him in 2018, including by: (i) sending him a disciplinary notice on March 20, 2018 (Compl.

¶¶ 33, 36; *see also* March 20, 2018 Letter); (ii) transferring him to another class assignment in late February 2018 (Compl. ¶ 30); (iii) expelling him from the classroom and relegating him to the teacher's lunchroom on March 13, 2018 (*id.* at ¶¶ 31, 36); and (iv) suspending him on March 29, 2018 (*id.* at ¶¶ 38).

### 2.    The Pleading Standards

#### a.    Title VII and the NYSHRL

The Court turns next to Defendants' argument that, even with respect to his timely claims, Plaintiff has failed to state a plausible claim of discrimination.[11]  Discrimination claims under Title VII and the NYSHRL are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015).[12]  Under this framework, the plaintiff bears the initial burden of

---

[11]    Plaintiff appears to be asserting Title VII claims against Toomey; however, it is well established that "individuals are not subject to liability under Title VII." *Wrighten* v. *Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam).  Accordingly, Plaintiff's Title VII claims against Toomey are dismissed.

Unlike Title VII, the NYSHRL provides for individual liability for discriminatory practices under two theories: (i) if the individual qualifies as the plaintiff's "employer," N.Y. Exec. Law § 296(1); or (ii) if the individual aided and abetted the unlawful discriminatory acts of others, *id.* § 296(6).  *See Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015) (discussing the two theories of liability under the NYSHRL).  As relevant here, under the aiding and abetting framework, "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' can be held individually liable as an aider and abettor." *Bonaffini* v. *City Univ. of N.Y.*, No. 20 Civ. 5118 (BMC), 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) (quoting *Feingold* v. *New York*, 366 F.3d 138, 158 (2d Cir. 2004)).  "This extends to personal liability for aiding and abetting allegedly unlawful discrimination by [an] employer even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory under the NYSHRL." *Farmer* v. *Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (internal quotation marks omitted).

[12]    The New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the NYCHRL.  *See* A8421/S6577 (as amended by S6594/A8424).  These amendments

establishing a *prima facie* case of discrimination.  *See Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).  To do so, the plaintiff must show that "[i] he belonged to a protected class; [ii] he was qualified for the position he held; [iii] he suffered an adverse employment action; and [iv] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138).  The burden of establishing a *prima facie* case in an employment discrimination case is "minimal."  *St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502, 506 (1993); *accord Lenzi* v. *Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).

At the motion to dismiss stage, however, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*[.]"  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see also Forkin* v. *Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 307 (E.D.N.Y. 2019) ("At the pleading stage, ... a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas prima facie* case.").  Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation."  *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

---

were signed into law by then-Governor Andrew Cuomo on or about August 12, 2019. Significantly, however, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019; they do not apply retroactively to Plaintiff's claims here.  *See Wellner* v. *Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).

To state a discrimination claim that can survive a motion for judgment on the pleadings under both Title VII and the NYSHRL, a plaintiff must "plausibly allege that [i] the employer took adverse action against him and [ii] his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86; *accord Zoulas* v. *N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019).  A plaintiff may satisfy this standard by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.  In short, the complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

### b.    The NYCHRL

"[T]he NYCHRL makes it 'an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'" *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013) (internal alterations omitted) (quoting N.Y.C. Admin. Code § 8-107(1)(a)).[13]

---

[13]    As with the NYSHRL, the NYCHRL also provides for individual liability.  *See Malena* v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) ("The NYCHRL provides a broader basis for direct individual liability than the NYSHRL.").  Simply put, "[a]n individual defendant may … be held personally liable under the NYCHRL if he participates in the conduct giving rise to the discrimination claim." *Schanfield* v. *Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (citation omitted).  "A claim for

"NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination." *Levy* v. *Legal Aid Soc'y*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019) (quoting *Johnson* v. *Andy Frain Servs., Inc.*, 638 F. App'x 68, 71 (2d Cir. 2016) (summary order)); *see also Williams* v. *N.Y.C. Transit Auth.*, 97 N.Y.S.3d 692, 695-96 (2d Dep't 2019). To plead a discrimination claim under the NYCHRL, a plaintiff must allege only that "she [was] treated 'less well' … because of a discriminatory intent." *Mihalik*, 715 F.3d at 110 (citing *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)). "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)." *Id.* (quoting *Williams*, 872 N.Y.S.2d at 40); *see also Wolf* v. *Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) (summary order) ("To state a claim for discrimination, a plaintiff must only show differential treatment of any degree based on a discriminatory motive."). Because the NYCHRL standard is more liberal than the corresponding federal and state law standards, courts must analyze NYCHRL claims "separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109.

### 3. Plausibility

As previously mentioned, for Plaintiff's Title VII and NYSHRL claims to survive a motion for judgment on the pleadings, he must "plausibly allege that [i] the employer took adverse action against him and [ii] his race, color, religion,

---

aider and abettor liability is also cognizable under the NYCHRL and is susceptible to the same standard as [aiding and abetting] under the NYSHRL, as [the] language of the two laws is virtually identical." *Id.* (internal quotation marks omitted).

sex, or national origin was a motivating factor in the employment decision."
*Vega*, 801 F.3d at 86.  Given that the NYCHRL imposes a lower standard of
liability, if Plaintiff has stated a discrimination claim under Title VII and the
NYSHRL, he has necessarily stated a discrimination claim under the NYCHRL.
*See, e.g., Taylor* v. *City of New York,* 207 F. Supp. 3d 293, 304 (S.D.N.Y. 2016).

It is undisputed that Plaintiff's termination occurred on September 17,
2019, and therefore falls within the applicable statute of limitations for
Plaintiff's Title VII, NYSHRL, and NYCHRL claims.  Moreover, Plaintiff's
termination constitutes a materially adverse action, which is defined as "a
materially adverse change in the terms and conditions of employment."  *Shultz*
v. *Congregation Shearith Israel of City of N.Y.,* 867 F.3d 298, 304 (2d Cir. 2017)
(citation omitted); *see also Morales* v. *Div. of Youth & Fam. Just.*, No. 14 Civ.
7253 (JGK), 2019 WL 3430168, at *4 (S.D.N.Y. July 30, 2019) ("Examples of
materially adverse employment actions include 'termination of employment, a
demotion evidenced by a decrease in wage or salary, a less distinguished title, a
material loss of benefits, significantly diminished material responsibilities, or
other indices ... unique to a particular situation.'" (quoting *Sanders* v. *N.Y.C.
Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004))).  As such, the central
dispute on Plaintiff's discrimination claims is whether Plaintiff has set forth
facts suggesting that his termination occurred under circumstances giving rise
to a minimal inference of discrimination.  *See Littlejohn*, 795 F.3d at 311.  The
Court concludes that he has.

24

Defendants contend that Plaintiff's allegations of discrimination amount
to nothing more than a "false syllogism: [i] I am (insert name of a protected
class); [ii] something bad happened to me at work; [iii] therefore, it happened
because I am (insert name of protected class)."  (Def. Br. 7 (quoting *Bermudez*
v. *The City of New York*, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011))).  The Court
disagrees, as Plaintiff has presented more than just unadorned allegations of
discrimination that merely coincide with his protected characteristics.

Of particular relevance here, Plaintiff has alleged that he was repeatedly
disciplined in situations where others outside of his protected class were not,
and that other Russian and Jewish employees at P.S. 195 were targeted for
negative treatment by Toomey.  (Pl. Br. 15-16).  *See Saji* v. *Nassau Univ. Med.
Ctr.*, 724 F. App'x 11, 17 (2d Cir. 2018) (summary order) (explaining that an
inference of discrimination may be drawn where "a plaintiff can put forward
evidence of 'more favorable treatment of employees not in the protected group.'
(quoting *Abdu-Brisson* v. *Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.
2001))).[14]  Plaintiff alleges that he routinely observed other paraprofessionals
(who were neither Jewish nor Russian) engaging in the very activities for which
he was disciplined, including, for instance, helping students with unfinished
classwork during lunch, reinforcing students' lessons, clapping near a child's

---

[14]     Plaintiff has alleged a basis to subject Toomey to individual liability under both the
NYSHRL and the NYCHRL.  The Complaint characterizes Toomey as the wellspring of
discriminatory sentiment at P.S. 195 and contains myriad allegations that she "actually
participate[d]" in conduct giving rise to his discrimination claims.  *See Bonaffini*, 2021
WL 2895688, at *2.  She may thus be held liable as an aider and abettor of
discriminatory conduct under the NYSHRL and the NYCHRL.

ear, and asking colleagues to watch an assigned student.  (Compl. ¶¶ 7, 12, 23, 34, 35).  Further, Plaintiff claims that Toomey was aware of instances in which other employees at P.S. 195 freely engaged in conduct similar to or more severe than that for which Plaintiff had been disciplined.  (*Id.* at ¶¶ 52-54).  More specifically, Toomey knew that Ms. McCann, a teacher of Irish descent, had grabbed a student so hard that it left marks on his arms, but faced no disciplinary action.  (*Id.* at ¶ 52).  Toomey also knew that John Guerin, a paraprofessional of Irish descent, put children in headlocks, took pictures of children sitting on his lap, and hugged students at the school, again without any repercussions.  (*Id.* at ¶¶ 53-54).

Moreover, Plaintiff alleges that he was not the only Russian-Jewish employee that Toomey targeted.  For example, Toomey exaggerated an allegation of verbal abuse against Julia Robison, a Russian immigrant, to remove her from her position as an English as a New Language teacher, only to replace her with an Irish instructor.  (Compl. ¶ 49).  Alla Drizovskaya, a Russian-Jewish immigrant, was another victim of Toomey's animus, as she too was baselessly accused of humiliating students, received poor reviews, and was eventually terminated.  (*Id.* at ¶ 50).  Lastly, Toomey repeatedly degraded Plaintiff's wife, Marina Zagerson, who is also a Russian Jewish immigrant, and fabricated disciplinary allegations against her.  (*Id.* at ¶ 51).[15]

---

[15]    Plaintiff includes several additional factual allegations in his opposition brief that are not in the Complaint, including information regarding the nationality of the paraprofessional who replaced him (Pl. Opp. 14), and written statements from Russian and Jewish individuals cited in the Complaint who claimed that they too were targets of Toomey's discrimination (*id.* at 16-17).  Despite his *pro se* status, the Court declines to

The Court finds that Plaintiff's allegations of discipline for conduct that other teachers and paraprofessionals engaged in without reproach, combined with his allegations that Toomey singled out Russian and Jewish individuals for particularly harsh treatment, are sufficient to raise a minimal inference of discriminatory motivation regarding his termination. *See Ruiz* v. *Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) ("A showing of disparate treatment — that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' — is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case.").

Defendants assert that Plaintiff's allegations are deficient because he has not alleged any discriminatory remarks by Toomey or anyone else and because he provides scant details to support his proffered comparators.  (Def. Br. 7-9). Defendants are correct that Plaintiff offers little by way of direct evidence of Defendants' discriminatory motive; but such direct allegations are not necessary to survive a motion for judgment on the pleadings.  *See Littlejohn*, 795 F.3d at 311 ("[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff … has at least minimal support for the proposition that the employer was motivated by discriminatory intent.").  As described above, Plaintiff has alleged facts

---

consider these new allegations on this motion, which were proffered for the first time in Plaintiff's opposition brief.  *See, e.g., CAC Grp., Inc.* v. *Maxim Grp., LLC*, No. 12 Civ. 5901 (KBF), 2012 WL 4857518, at *1 n.1 (S.D.N.Y. Oct. 10, 2012), *aff'd*, 523 F. App'x 802 (2d Cir. 2013) (summary order).  In any event, the Court finds that Plaintiff has adequately pleaded claims of discrimination without reference to these additional facts.

suggesting that he, along with at least three other Russian and Jewish individuals at P.S. 195, were falsely accused of misconduct, singled out for unfavorable treatment, and punished for conduct that was regularly engaged in by others.  The Court acknowledges that in establishing an inference of discrimination, "a plaintiff must allege that [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compere [himself]," *Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted), and that Plaintiff's allegations lack important contextual information to permit the Court to assess the similarities.  However, the Court does not view Plaintiff's allegations to be so lacking as to be fatal, especially considering that in the typical case, "whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss."  *Id.* (internal alterations omitted).  The Court expects more clarity on Plaintiff's proffered comparators at later stages in the proceedings, but finds that he has set forth plausible support giving rise to a minimal inference of discriminatory motivation.

Defendants further argue that the record shows that they had a legitimate business reason to terminate Plaintiff, which rationale was confirmed by the New York Supreme Court in Plaintiff's Article 78 proceeding. (Def. Br. 10-11).  But in so arguing, Defendants ask the Court to disregard the applicable legal standards on a Rule 12(c) motion in at least two respects. *First,* Defendants essentially ask the Court to disbelieve well-pleaded allegations in the Complaint.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009)

(explaining that when considering a motion to dismiss, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").  Even acknowledging the record evidence suggesting that Defendants had legitimate cause to terminate him, the Court notes Plaintiff's contention that the evidence in the record is itself reflective of discrimination.  Without any opportunity to develop a factual record, the Court will not accept Defendants' invitation to credit the very documents that Plaintiff maintains were concocted to mask Defendants' discriminatory intent — indeed, whether these documents are to be believed is the crux of Plaintiff's case.

*Second*, the Court may not supplant Plaintiff's well-pleaded allegations in the Complaint with the New York Supreme Court's findings in its decision rejecting Plaintiff's Article 78 challenge.  As discussed *supra*, the Court may consider the state court's decision "not for the truth of the matters asserted [therein] …, but rather to establish the fact of such litigation and related filings."  *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70 (citation omitted).  Although this state court decision concerned Plaintiff's termination and is undoubtedly related to the case at bar, the New York Supreme Court did not pass on Plaintiff's claims of discrimination.  (Def. Br. 10).  Importantly, that court's determination that Plaintiff's termination was not arbitrary and capricious does not, as a matter of law, foreclose the plausibility of Plaintiff's

claim of discriminatory termination.[16]  It remains the case that Plaintiff has set

forth facts in support of his contention that his disciplinary record was tainted

by discrimination.  At this stage of the proceedings, the Court is satisfied that

Plaintiff has met the minimal burden necessary to plead a claim of

discriminatory termination.[17]

     As previously discussed, the NYCHRL sets a lower standard of liability for

claims of discrimination.  *See Mihalik*, 715 F.3d at 109.  Thus, to the extent

---

[16]    Defendants gesture at the "preclusive effect" of the state court's Article 78 decision, in support of their argument that Defendants had a legitimate reason for terminating Plaintiff.  (*See* Def. Reply 8 (citing *Petrella* v. *Siegel*, 843 F.2d 87, 90 (2d Cir. 1988))).  In *Petrella*, a suit brought under 42 U.S.C. § 1983, the Second Circuit held that a state court's determination in a parallel Article 78 proceeding that the plaintiff did not resign from his job was entitled to some preclusive effect "even though the city may be appealing that determination."  843 F.3d at 90.  Here too, it appears likely that the state court's determination that Defendants had a legitimate reason to terminate Plaintiff is entitled to preclusive effect, even if Plaintiff intends to appeal that decision.  *See LaFleur* v. *Whitman*, 300 F.3d 256, 272 (2d Cir. 2002) ("A judgment pursuant to Article 78 may preclude relitigation of issues already decided in that earlier judgment.").

However, the state court's finding is not dispositive of Plaintiff's discrimination claims, as Plaintiff is entitled to an opportunity at a future stage of the proceedings to demonstrate that Defendants' proffered reasons for his termination were pretextual. *See, e.g., Abdu-Brisson* v. *Delta Air Lines, Inc.*, 239 F.3d 456, 469 (2d Cir. 2001) (explaining that under *McDonnell Douglas*, if a defendant articulates a legitimate, nondiscriminatory reason for an adverse action, "the burden shifts back to the plaintiff to prove that the employer's forward with evidence that the employer's proffered explanations were merely pretextual and that the actual motivations more likely than not were discriminatory").

Moreover, even if the Article 78 proceedings have some preclusive effect on a discrete issue in this case, it does not have *res judicata* effect, so as to entirely bar Plaintiff's claims in this suit.  *See, e.g., Latino Officers Ass'n* v. *City of New York*, 253 F. Supp. 2d 771, 782-83 (S.D.N.Y. 2003) ("[T]here is an incomplete overlap between the relief available to the plaintiffs in their Article 78 proceedings and in this case [asserting federal, state, and city discrimination claims].  In consequence, the doctrine of claim preclusion does not apply here.").

[17]    Defendants additionally cite *Reeves* v. *Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000), for the proposition that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision."  (Def. Br. 10; Def. Reply 7).  However, this case is plainly inapposite, because the Supreme Court in *Reeves* was assessing the kind and amount of evidence necessary to sustain a jury verdict.

Plaintiff has stated a claim for discriminatory termination under Title VII and the NYSHRL, he has necessarily satisfied the NYCHRL's pleading standard. Accordingly, Defendants' motion for judgment on the pleadings is denied to the extent Plaintiff has pleaded claims of discriminatory termination against DOE under Title VII, the NYSHRL, and the NYCHRL, and against Toomey under the NYSHRL and the NYCHRL.

**C.    Plaintiff's Allegations Fail to State a Hostile Work Environment Claim**

Plaintiff also brings hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL against Defendants, based on Toomey's longstanding pattern of targeting and harassing Plaintiff, which began in May 2013 with his first unwarranted disciplinary letter.  (Pl. Opp. 19-21). Defendants contend as an initial matter that Plaintiff's Title VII hostile work environment claim is administratively unexhausted, which is grounds for dismissal.  (Def. Br. 11-12).  In any event, Defendants argue that Plaintiff's hostile work environment claims are too conclusory to state a plausible claim. (*Id.* at 12-13).  The Court agrees with Defendants that Plaintiff's Title VII hostile work environment claim is unexhausted and that his NYSHRL hostile work environment claim is inadequately pleaded.  However, claims for discrimination and hostile work environment under the NYCHRL are assessed under the same standard, and the Court has already determined that Plaintiff has stated a claim under the NYCHRL for his allegations of unequal treatment.[18]

---

[18]    Defendants do not argue that Plaintiff's hostile work environment claims are untimely, nor could they.  Under the continuing violations doctrine, "[a] hostile work environment

31

### 1.    Title VII

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway* v. *Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin* v. *Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)). Claims that were not raised to the EEOC can be pursued in an action under Title VII only "if they are reasonably related to those that were filed with the agency." *Deravin*, 335 F.3d at 200 (quoting *Legnani* v. *Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). When determining whether a claim is reasonably related, courts are to consider whether "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* at 200-01 (quoting *Fitzgerald* v. *Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)). A court's consideration should focus "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.* at 201 (internal alterations

---

claim, unlike a discrete employment action, will be treated as a continuing violation where the claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Harris* v. *S. Huntington Sch. Dist.*, No. 06 Civ. 3879 (DGT), 2009 WL 875538, at *10 (E.D.N.Y. Mar. 30, 2009) (quoting *Morgan*, 536 U.S. at 117). "Thus, in hostile work environment cases, an offensive incident within the limitations period permits consideration of an incident preceding the limitations period ... if the incidents are sufficiently related." *Caravantes* v. *53rd St. Partners, LLC*, No. 09 Civ. 7821 (RPP), 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12, 2012) (internal quotation marks omitted). Courts apply the same standard to determine whether a hostile work environment is a continuing violation under Title VII, the NYSHRL, and the NYCHRL. *See, e.g.*, *Bermudez* v. *City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011). As Plaintiff's termination falls within the applicable limitations periods, his hostile work environment claims are timely.

omitted) (quoting *Freeman* v. *Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)).  "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'"  *Williams*, 458 F.3d at 70 (quoting *Deravin*, 335 F.3d at 202).

Though "the 'reasonably related' inquiry requires a fact-intensive analysis," *Mathirampuzha* v. *Potter*, 548 F.3d 70, 76 (2d Cir. 2008), the Second Circuit has recognized that "[h]ostile environment claims are different in kind from discrete acts," *id.* at 77 (quoting *Morgan*, 536 U.S. at 115).  Accordingly, courts in this District have consistently held that "allegations in the EEOC charge [that] relate solely to several discrete instances of alleged discrimination or retaliation ... are insufficient to exhaust a hostile work environment claim." *Batiste* v. *City Univ. of N.Y.*, No. 16 Civ. 3358 (VEC), 2017 WL 2912525, at *6 (S.D.N.Y. July 7, 2017) (quoting *Perez* v. *N.Y. & Presbyterian Hosp.*, No. 05 Civ. 5749 (LBS), 2009 WL 3634038, at *10 (S.D.N.Y. Nov. 3, 2009)); *see also Bowman* v. *N.Y. State Hous. & Cmty. Renewal*, No. 18 Civ. 11596 (ER), 2020 WL 1233701, at *7 (S.D.N.Y. Mar. 13, 2020) ("Generally, presenting a disparate treatment or retaliation claim to the EEOC will not exhaust a hostile work environment claim."); *Khater* v. *API Indus.*, No. 16 Civ. 6695 (CS), 2017 WL 6515531, at *3 (S.D.N.Y. Dec. 19, 2017) ("In the specific context of hostile work environment claims, to properly exhaust [such a] claim, a plaintiff must actually allege a hostile work environment claim in his EEOC Charge." (internal quotation marks omitted)).

Here, Plaintiff's SDHR Complaint alleged national origin and religious discrimination related to the circumstances surrounding his disciplinary reviews and his termination. (*See* Compl. 18; *see also id.* at 24 ("I believe I was targeted with termination based on my religion and national origin")). The factual addendum to Plaintiff's SDHR Complaint, in turn, relays information about the SCI investigation that led to his suspension and eventual termination, as well as certain details about other co-workers of Russian and Jewish extraction whom he believes were mistreated and another non-Russian paraprofessional who engaged in misconduct without repercussions. (*Id.* at 23-24). That said, and in stark contrast with the Complaint in this case, the SDHR Complaint contains no facts about Plaintiff's experience at P.S. 195 prior to March 2018, and the only mention of harassment pertains to *someone else's* experience at the school. (*See id.* at 24 ("The music teacher Alla, who is Jewish and Russian, also had to leave the school due to harassment in 2014.")). Whereas Plaintiff alleges in his pleadings certain instances of discrimination stretching back to May 2013 (*see* Pl. Opp. 20), the SDHR Complaint focuses almost exclusively on the events directly related to his termination and does not reasonably suggest that he was accusing the Defendants of perpetuating a hostile work environment. Accordingly, the Court deems Plaintiff's Title VII hostile work environment claim to be unexhausted and dismisses the claim.

### 2. The NYSHRL

To state a hostile work environment claim under the NYSHRL, a plaintiff must plead facts showing that "the workplace [wa]s permeated with

discriminatory intimidation, ridicule, and insult, that [wa]s sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera* v. *Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 & n.4 (2d Cir. 2014) (internal quotation marks omitted); *see also Summa* v. *Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard."). The "standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo* v. *Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). To support a hostile work environment claim, the "offensive conduct must ... be more than episodic"; rather, it "must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001) (internal quotation marks omitted). "In determining whether a plaintiff suffered a hostile work environment, [the Court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Love* v. *Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (citing *Littlejohn*, 795 F.3d at 321).

Measured against these standards, Plaintiff's hostile work environment claim under the NYSHRL fails to clear the plausibility threshold. Plaintiff

contends that he endured a pattern of harassment and false allegations
spearheaded by Toomey, which included four unjustified disciplinary letters
over the course of approximately five years (Compl. ¶¶ 4, 9, 13, 33); an abrupt
transfer to a different classroom (*id.* at ¶ 30); an order that he remain in the
teacher's lunchroom (*id.* at ¶ 31); his suspension related to the SCI
investigation (*id.* at ¶¶ 37-38); and his ultimate termination (*id.* at ¶ 47).
Plaintiff claims that as a result of Principal Toomey's "harassment" and his
distress from receiving multiple disciplinary letters in a short period of time, he
mentioned potentially killing himself at the thought of losing his job and being
unable to provide for his family.  (*Id.* at ¶ 18).  Plaintiff concedes that he did not
receive any disciplinary letters for approximately four years, from 2014 to
2018, but alleges that during this period, Principal Toomey warned Plaintiff's
teachers to pay special attention to his work.  (*Id.* at ¶ 24).

There is little question that Plaintiff subjectively perceived his work
environment to be abusive — and the Court does not wish to minimize
Plaintiff's anguish stemming from his perception that his job was in jeopardy.
However, even drawing all reasonable inferences in Plaintiff's favor, the
allegations contained in the Complaint fail to state a plausible hostile work
environment claim, because they fall short of the kinds of conduct that courts
have found to be objectively severe or pervasive.  *See, e.g.*, *Modica* v. *N.Y.C.
Dep't of Educ.*, No. 20 Civ. 4834 (JMF), 2021 WL 3408587, at *7 (S.D.N.Y.
Aug. 4, 2021) (finding the issuance of disciplinary notices, removal from certain
positions within the school, and receipt of low evaluations to be insufficient to

36

make out a hostile work environment claim); *Lenart* v. *Coach Inc.*, 131 F. Supp. 3d 61, 67-69 (S.D.N.Y. 2015) (finding that allegations regarding others' favorable treatment on the basis of gender did not assert a plausible hostile work environment claim); *cf. Harewood* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 5487 (KPF), 2021 WL 673476, at *13 (S.D.N.Y. Feb. 22, 2021) (finding, in summary judgment context, that negative performance reviews and disciplinary letters are not sufficiently severe or pervasive to give rise to a hostile work environment claim); *Davis-Molinia* v. *Port Auth. of N.Y. & N.J.*, No. 08 Civ. 7584 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding, on summary judgment, that diminished job responsibilities, exclusion from staff meetings, deliberate avoidance, and yelling and talking down to, among other conduct, was not enough to show that the defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order).  Besides the receipt of disciplinary letters that Plaintiff believes to be unfair or unwarranted and the cascading series of disciplinary actions culminating in Plaintiff's termination, Plaintiff does not flesh out how Toomey "harassed" him and there is no suggestion of any physically threatening conduct or derogatory remarks.  Furthermore, Plaintiff portrays a period of four years without any disciplinary conduct taken against him, thus undercutting his argument that the incidents "were sufficiently continuous and concerted to be considered pervasive." *Kassner* v. *2nd Ave. Deli., Inc.*, 496 F.3d 229, 241 (2d Cir. 2007).

In sum, the Court perceives Plaintiff's state-law hostile work environment claim as, at base, an attempt to "turn his discrete claims of discrimination … , string them together and call that a 'hostile work environment[.]'" *Ben-Levy* v. *Bloomberg L.P.*, No. 11 Civ. 1554 (KBF), 2012 WL 2477685, at *12 (S.D.N.Y. June 26, 2012), *aff'd*, 518 F. App'x 17 (2d Cir. 2013) (summary order).  Such an approach does not adequately state a hostile work environment claim.  The Court therefore dismisses Plaintiff's hostile work environment claim under the NYSHRL.[19]

### 3.    The NYCHRL

Hostile work environment claims brought pursuant to the NYCHRL require a plaintiff to show only that she was subjected to "'unequal treatment' based upon membership in a protected class." *Marseille* v. *Mount Sinai Health Sys. Inc.*, No. 18 Civ. 12136 (VEC), 2021 WL 3475620, at *9 (S.D.N.Y. Aug. 5, 2021) (quoting *Fattoruso* v. *Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012)).  "Because claims for hostile work environment and discrimination are governed by the same provision of the NYCHRL, they are analyzed under the same standard." *Id.* (quoting *Nguedi* v. *Fed. Rsrv. Bank of N.Y.*, No. 16 Civ. 636 (GHW), 2019 WL 1083966, at *10 (S.D.N.Y. Mar. 7, 2019), *aff'd*, 813 F. App'x 616 (2d Cir. 2020) (summary order)); *see also Rothbein* v. *City of New York*, No. 18 Civ. 5106 (VEC), 2019 WL 977878, at *9 n.12

---

[19]    Because hostile work environment claims under Title VII and the pre-amendment NYSHRL are evaluated under the same standard, *see Summa* v. *Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013), Plaintiff's Title VII claim for hostile work environment is also inadequately pleaded, in addition to being administratively unexhausted.

(S.D.N.Y. Feb. 28, 2019) ("Under the NYCHRL, … there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination: the former is subsumed into the latter[.]").

The Court views Plaintiff's NYCHRL hostile work environment claim as coextensive with his NYCHRL discrimination claim.  Therefore, Defendants' motion for judgment on the pleadings as to Plaintiff's NYCHRL claims must be denied for the reasons discussed above.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part.  As against DOE, Plaintiff has adequately stated Title VII, NYSHRL, and NYCHRL claims for employment discrimination in connection with his termination.  As against Toomey, Plaintiff has stated parallel discrimination claims pursuant to the NYSHRL and NYCHRL.  With respect to the hostile work environment claims, Defendants' motion for judgment on the pleadings is granted as to Plaintiff's claims under Title VII and the NYSHRL, and denied as to Plaintiff's claim under the NYCHRL.

The parties are directed to submit to submit a joint status letter and proposed case management plan on or before **March 2, 2022**.

The Clerk of Court is directed to terminate the pending motions at docket entries 20 and 21.

SO ORDERED.

Dated:      January 31, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge